UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

═══════════════════════════════════

MICHELLE M. NOZINSKY,

                              Plaintiff,

                                                    **DECISION AND ORDER**
                                                    06-CV-462A

           v.

MICHAEL J. ASTRUE,[1] as Commissioner
 of the Social Security Administration,

                              Defendant.

═══════════════════════════════════

## I.    INTRODUCTION

          This action is brought pursuant to 42 U.S.C. § 405(g), to review the final

determination of defendant the Commissioner for Social Security

("Commissioner") that plaintiff Michelle M. Nozinsky is not entitled to disability

insurance benefits under Title II of the Social Security Act (the "Act").  Plaintiff

filed an application for disability insurance benefits on March 24, 2004, which was

denied on July 26, 2004.  An administrative hearing was held on July 28, 2005,

before Administrative Law Judge ("ALJ") Robert Young, who considered the case

*de novo* and found, in a written decision on February 6, 2006, that plaintiff was

not disabled as defined under the Act.  Plaintiff appealed, but the denial of

─────────────────────

          [1] The Clerk of the Court is directed to amend the caption of the case to
reflect the automatic substitution of Michael J. Astrue for JoAnne B. Barnhart
required by Rule 25(d) of the Federal Rules of Civil Procedure ("FRCP").

benefits became final on May 18, 2006 when the Appeals Council denied

plaintiff's request for review.

Plaintiff commenced this action on July 13, 2006.  On September 7, 2006,

the parties stipulated to close this case and to remand it to the Commissioner

under the sixth sentence of 42 U.S.C. § 405(g) due to an inaudible hearing tape.

A second hearing was held before ALJ Marilyn Zahm on September 21, 2007,

who considered plaintiff's case *de novo*.  On October 23, 2007, ALJ Zahm issued

a decision finding that plaintiff was not disabled within the meaning of the Act

because she could perform light work in the national economy.  The parties

subsequently re-opened the case to continue litigation.  Presently before the

Court are cross-motions for judgment on the pleadings filed on August 20, 2009,

by defendant (Dkt. No. 12) and on September 29, 2009, by plaintiff (Dkt. No. 14).

The Court has deemed the motions submitted on papers pursuant to FRCP

78(b).

For the reasons below, the Court grants defendant's motion and denies

plaintiff's cross-motion.

## II.   BACKGROUND

This case concerns plaintiff's claims that she has been disabled since July

1, 2000 because of lingering back, neck, and shoulder damage from a March 11,

1999 car accident.  Plaintiff, who is 39 years old, last worked in October 1999 as

a cleaner with her mother's cleaning business.

A.    *Medical Evidence*

     1.    *Evidence Prior to July 1, 2000*

After her car accident, plaintiff was taken to the Kenmore Mercy Hospital emergency room, where she complained of right knee and shin pain.  An X-ray showed no evidence of a fracture or dislocation of her cervical spine, but plaintiff was diagnosed with a right leg contusion and a cervical strain.  On December 2, 1999 plaintiff saw Dr. Swaninath Ramalingam, M.D., complaining of back, shoulder, and arm pain, with pain radiating down her right leg.  Dr. Ramalingam found tenderness in plaintiff's right lumbosacral area, discomfort in her shoulders, and a decrease in right arm strength.  Plaintiff had limited range of motion at her hips but an asymptomatic gait.  Dr. Ramalingam diagnosed plaintiff with lower back pain with radiculopathy, and referred her to Dr. Valerie Vullo, M.D. for further evaluation.

Dr. Vullo examined plaintiff on April 7, 2000.  Plaintiff had full active range of motion in her shoulders but did have notable pain in abduction and flexion beyond 90 degrees.  Dr. Vullo found a normal gait and no leg strength deficits. An MRI of the cervical spine revealed a mild disc bulge at C5-6.  An MRI of the lumbosacral spine showed a tiny disc herniation at L4-5; a bilateral grade I to II spondylolisthesis of L5–S1, an annular tear of L5-S1, and compromise of bilateral L5 neural foramina due to spondylolisthesis.  Dr. Vullo diagnosed right shoulder pain, cervical strain, and low back pain and lumbar radiculopathy from the L4-5

3

disc herniation and spondylolisthesis.  In Dr. Vullo's opinion, the plaintiff was temporarily, totally disabled.

Plaintiff was examined by Dr. Michael Hayman, M.D. on May 8, 2000, who ordered an MRI of plaintiff's shoulder.  The May 18, 2000, MRI showed symptoms consistent with bursitis and a small partial thickness tear.  On June 9, plaintiff returned to Dr. Vullo, who found little more than strength improvements. Dr. Vullo's diagnosis was substantially unchanged, and she maintained that plaintiff remained temporarily, totally disabled.

Plaintiff was examined by Dr. Ignatius Bertola, M.D. on June 27, 2000.  Dr. Bertola found that the plaintiff had no muscle weakness and full range of motion of both shoulders, elbows, wrists, and cervical spine.  Plaintiff had full flexion in her shoulders and lumbar spine, and had full range of motion of her hips, knees, and ankles.  Dr. Bertola found no causally related disability and concluded that plaintiff was capable of performing her usual duties as a commercial cleaner as well as her household duties without limitation or restriction.

2.   *Evidence After July 1, 2000*

Plaintiff visited Dr. Anthony Leone, M.D. on October 5, 2000, complaining of right leg and shoulder pain and back discomfort stemming from the accident. Dr. Leone found a positive impingement sign on plaintiff's right rotator cuff, but no evidence of weakness.  Plaintiff was examined on October 19, 2000, by Dr. Jeffrey Lewis, M.D., who found three problems: right shoulder injury, thoracic disc

herniation at T11-12 on the right, and grade I to II spondylolisthesis at L5-S1, producing a right L5 radiculopathy.  Dr. Lewis recommended surgery.

On November 8, 2000, plaintiff underwent surgery on her right shoulder to relieve symptoms of impingement syndrome.  Upon further examination by Dr. Bertola on January 11, 2001, plaintiff had recovered from the surgery.  Dr. Bertola again concluded that plaintiff had no causally related disability and could return to her duties as a commercial cleaner.  An examination by Dr. Stephen Greenberg, M.D. on March 6, 2001 found that plaintiff suffered from two pain syndromes: musculoskeletal strain involving the mid-to-lower right lumbar area and in the right shoulder area from tenderness or arthritic condition and low back pain.  The right shoulder pain was severe while the low back pain was moderate.

On April 26, 2001, Dr. Bertola examined plaintiff for a third time and found nothing new or remarkable.  He again opined that plaintiff could resume her usual duties as a commercial cleaner.

On January 31, 2002, plaintiff was again examined by Dr. Leone.  Plaintiff complained of right shoulder pain, and Dr. Leone found that updated X-rays showed a spondylolisthesis at L5-S1 and hyperlordosis at the lumbosacral spine. Dr. Leone concluded that plaintiff had been temporarily, totally disabled since November 2000.

Plaintiff returned to Dr. Lewis on August 9, 2002, complaining about more difficulty and pain in the right shoulder and lower back.  Upon examination, Dr. Lewis found a "significant disabling condition" in plaintiff's lumbosacral spine and recommended surgery in the near future.

At the request of the Commissioner, plaintiff was examined by Dr. Fenwei Meng, M.D. on June 8, 2004, who diagnosed a thoracic lumbar spine injury and asthma.  Dr. Meng opined that plaintiff had a moderate to severe limitation in the range of motion for her lumbar spine, but no more than mild limitation in her extremities.  On the same day, plaintiff visited Dr. Thomas Ryan, Ph.D. for a psychological examination.  Dr. Ryan diagnosed plaintiff with adjustment disorder and depressed mood.  Dr. Ryan opined that plaintiff "can follow and understand simple directions and instructions, perform simple tasks independently, and maintain attention and concentration for brief periods of time.  She can maintain a regular schedule . . . is capable of learning new tasks . . . [but] would have difficulty performing complex tasks if physically involved.  She can make appropriate decisions, relate with others, and deal with stress."  (Tr. 148.)

**B.**    ***Vocational Evidence***

At the September 21, 2007 hearing, Vocational Expert Peter Manzi ("Manzi") testified about the types of jobs that plaintiff could perform in the national economy.  Specifically, Manzi stated that a person with plaintiff's limitations could not perform the duties of a cleaner or cashier, which were her

6

past jobs, but could perform jobs such as: counter clerk, photo finishing; furniture rental clerk; investigator, dealer accounts; call out operator; and surveillance system monitor.

### C.   *ALJ Zahm's Decision*

In her decision denying benefits, ALJ Zahm found that plaintiff had severe impairments of a right shoulder disorder and a back disorder, but that she had no impairments that are listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Although plaintiff could not perform her past relevant work, she had the residual functional capacity to perform light work that did not require prolonged ambulation and required no more than occasional bending and lifting.  ALJ Zahm also found that plaintiff's complaints of pain and limitations, though substantiated partially, were out of proportion to the medical evidence.  ALJ Zahm concluded that disability benefits were not appropriate.

## III.   DISCUSSION

Through her cross-motion, plaintiff raises three main arguments challenging the denial of disability benefits.  First, plaintiff argues that the ALJ erred in concluding that she had the residual functional capacity for a range of light work.  Second, plaintiff argues that the ALJ failed to give controlling weight to the opinions of her treating physicians and, alternatively, failed to recontact those treating physicians.  Third, plaintiff argues that the ALJ did not properly assess plaintiff's subjective complaints.  The Court will examine each argument in turn.

7

A.    *Scope of Review Generally*

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. § 405(g). Substantial evidence is defined as "more than a scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citations omitted).  "While the opinions of a treating physician deserve special respect, they need not be given controlling weight where they are contradicted by other substantial evidence in the record.  Genuine conflicts in the medical evidence are for the Commissioner to resolve."  *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (citations omitted).

A person is considered disabled and entitled to Social Security disability insurance benefits under the Act when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  A physical or mental impairment is considered a disability only when it is "of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* § 423(d)(2)(A).

8

The Commissioner employs a five-step process to determine whether a claimant is disabled:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If [she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [she] has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.  Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); *see also* 20 C.F.R. §§ 404.1520, 416.920.  Here, plaintiff's arguments all focus on the fifth step of the determination process.  The ALJ found that (1) plaintiff was not employed during the relevant period; (2) plaintiff had severe impairments in her right shoulder and back; (3) plaintiff's impairments were not of a kind listed in Appendix 1; and (4) plaintiff did not have the residual functional capacity to perform her past work.  At step five, however, the ALJ found, based on her residual functional capacity assessment and the testimony from Vocational

Expert Manzi, that plaintiff could perform other jobs in the national economy,
meaning that she was not disabled and not entitled to disability benefits.

### B.    *Plaintiff's Residual Functional Capacity Assessment*

Plaintiff argues that the ALJ erred in assessing her residual functional
capacity and substituted her own opinion in place of a medical expert.  Plaintiff
argues that there is no medical evidence in the record with which to support the
ALJ's residual functional capacity assessment.  The Commissioner argues that
plaintiff's treating physicians have reported her strength as good as far back as
December 2000, and that the ALJ properly assessed consistent evidence about
limitations in her range of motion.

The residual functional capacity assessment is based on "all of the relevant
medical and other evidence" in a plaintiff's record.  20 C.F.R. § 416.945(a)(3).
Here, the ALJ found that plaintiff could perform light work, without prolonged
ambulation and only occasional bending and lifting.  To come to this conclusion,
the ALJ relied on medical reports of Drs. Greenburg and Meng showing that
plaintiff had reduced range of motion in her right shoulder, and on medical reports
of Drs. Vullo and Leone that also showed what plaintiff's range of motion was.
The ALJ also found that plaintiff's strength has been reported as 5/5 or good
since December 2000, while Dr. Bertola found no signs of disability over the
course of three examinations.

In all, substantial evidence supports the ALJ's finding that plaintiff met her burden for the first four steps of the determination process, but that the Commissioner met his burden on the fifth step.  Substantial evidence supports the ALJ's determination that plaintiff could perform light work in the national economy.

**C.**	***Controlling Weight and Failure to Recontact Treating Physicians***

Plaintiff argues that the ALJ failed to develop the full administrative record by failing to recontact the plaintiff's treating physicians, Drs. Vullo, Leone, and Lewis.  Specifically, plaintiff contends that the "ALJ was under a duty to complete the record by recontacting [Drs. Vullo, Leone, and Lewis] for more specific medical interpretations of why the plaintiff was 'disabled,' or why she suffered a 'significant disabling condition.'"  (Dkt. No. 14 at 8).  The Commissioner counters that any opinion of disability from a treating physician by itself should not receive controlling weight, and that the medical evidence did not contain any conflicts that required recontacting the treating physicians.

1.	*Opinions of Treating Physicians*

When considering the opinions of treating physicians, the ALJ gives them controlling weight when the opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence" in the record.  20 C.F.R. § 404.1527(d)(2).  However,

if treating physician opinions are inconsistent with the evidence then the ALJ will look to the opinions of other physicians who have treated the claimant longer and conducted more examinations of the claimant.  20 C.F.R. § 404.1527(d)(2)(i-ii). Opinions of disability, however, are reserved for the Commissioner.  20 C.F.R. § 404.1527(e)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); *see also Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("Moreover, some kinds of findings—including the ultimate finding of whether a claimant is disabled and cannot work—are reserved to the Commissioner.  That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability.  A treating physician's statement that the claimant is disabled cannot itself be determinative.") (internal quotation marks and citation omitted).

Here, the ALJ gave controlling weight to the medical reports of Drs. Vullo, Leone, and Lewis to determine plaintiff's residual functional capacity.  The ALJ gave great weight to the reports of Dr. Vullo and Dr. Leone, which showed that plaintiff experienced pain when lifting her arm above 90 degrees, and corroborated the findings with Dr. Greenburg's and Dr. Meng's reports of limited motion in the right shoulder.  The ALJ used Dr. Lewis's report that plaintiff had difficulty walking and Dr. Vullo's report that plaintiff's gait was normal to determine that plaintiff could not engage in prolonged ambulation.  The record shows that

12

the ALJ gave at least as much consideration to the medical reports of the treating physicians as to those of the independent medical examiners.  Therefore, plaintiff's contention that the ALJ did not properly assess the medical opinions of her treating physicians is unfounded.

2.    *Recontacting Medical Sources*

The ALJ has a duty to "develop [a] complete medical history for at least the 12 months preceding the month in which" an application for disability benefits is filed.  20 C.F.R. § 404.1512(d).  To do this, the ALJ must "make every reasonable effort to help" a claimant obtain medical reports from her own medical sources. *Id.*  When the medical history is "inadequate" for the ALJ to determine whether the claimant is disabled, the ALJ must recontact the medical sources to acquire the required information.  20 C.F.R. § 404.1512(e); *see also id.* § 404.1512(e)(1) (stating that the ALJ may recontact when "the report from [the] medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques"); *Rosa v. Callahan*, 168 F.3d 72, 79–80 (2d Cir. 1999) (vacating and remanding a denial of benefits where "[t]he ALJ had before her only [the treating physician's] sparse notes which reflected nine visits between himself and [plaintiff], considerably fewer visits than the two likely had based upon [plaintiff's] testimony suggesting monthly treatment over a period of years.  Moreover, [the treating physician's] assessment was only

13

one page in length and, as the ALJ recognized, wholly conclusory.").  However, if the medical history is not inadequate then there is no need to recontact the medical sources.

Here, the ALJ gave controlling weight to the treating physicians' reports of reduced ambulation and reduced range of shoulder motion, along with reports from other physicians.  Although plaintiff disagrees with the ALJ's ultimate conclusions based on the medical record, that disagreement by itself does not create ambiguities about the underlying medical information.  Moreover, the ALJ was under no obligation to consider opinions of disability, as that opinion is reserved to the ALJ.  Because the record was complete, and the ALJ properly assessed the treating physicians' opinions, there was no need for the ALJ to recontact Drs. Vullo, Leone, and Lewis.

### D.  *Plaintiff's Subjective Complaints*

After considering the record, the ALJ could reasonably discount the plaintiff's subjective complaints of pain and conclude that she had the residual functional capacity to perform limited light work.  An ALJ must consider a claimant's subjective complaints of pain.  20 C.F.R. §§ 404.1529(a, d), 416.929(a, d).  However, the ALJ "is not obliged to accept without question the credibility of such subjective evidence.  The ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged

by the claimant." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979) (citations omitted).  Here, plaintiff claims that her pain keeps her from performing a lot of activity during the day and that she must lie down frequently.  In contrast, the medical evidence indicates that she has good strength, can raise her right arm to 90 degrees, and only has moderate limitations in bending and lifting.  Moreover, plaintiff does not take significant medication and has not sought significant treatment for her back disorder, has not sought further treatment for her right shoulder, and has shown several inconsistencies in her written and oral statements.  Taken as a whole, the medical evidence does not support subjective symptoms severe enough to constitute a disability.  Therefore, the ALJ did not abuse her discretion when evaluating plaintiff's subjective complaints.

## IV.    CONCLUSION

For all of the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. No. 12) is granted, and plaintiff's cross-motion (Dkt. No. 14) is denied.  The Clerk of the Court shall close this case.

SO ORDERED.

*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: JULY 8, 2011